# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JAMES JAY FRANKINA,

                Petitioner,                    Case Number: 05-CV-71159

v.                                            HON. JOHN CORBETT O'MEARA

DOUG VASBINDER,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner James Jay Frankina is currently incarcerated at the G. Robert Correctional Facility in Lapeer, Michigan. He has filed a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction for first-degree criminal sexual conduct. For the reasons set forth below, the Court denies the petition.

### I.      Facts

Petitioner's conviction arises out of the sexual assault of Kimberly Park on January 8, 2000, in Harrison Township, Michigan.

Park testified that, in January 2000, she worked as an entertainer for an escort service. Late in the evening of January 8, 2000, Park received a call from her employer with a telephone number and instructions to call the number to find out where she should go. She telephoned the number and the man who answered told her his name was Scott and that she should go to apartment 915 at the Metro Towers apartments. The man requested that she be dressed like a little girl and that she not wear undergarments. Park testified that she would not dress as he requested, but would instead wear a red mini skirt, boots and her hair in a ponytail. She also

informed him that he would be charged $195.00.

After she arrived at Metro Towers, she rang apartment 915 and was met in the lobby by a man who identified himself as Scott. At trial, Park identified Petitioner as the man who had called himself Scott. Petitioner directed her into an elevator. Park testified that Petitioner stopped the elevator between floors and began assaulting her by pulling her hair and digitally penetrating her against her will. She fought him. When the elevator door opened, Park left. She then returned with her brother, who was apparently going to confront "Scott." The two, however, soon left. Park testified that she did not contact police for 2-1/2 days.

Detective William Mangan testified that he interviewed Petitioner in connection with Park's allegations. He testified that Petitioner gave him five different versions of what happened that evening. Detective Mangan stated that in each version Petitioner denied assaulting Park.

The preliminary examination testimony of Brandy Doty was read at trial. Doty testified that Petitioner sexually assaulted her on December 24, 1999, in the same apartment building where the assault of Ms. Park occurred, and in much the same manner.

Petitioner testified in his own defense. He testified that he contacted an escort service late in the evening on January 7, 2000. He received a call back from a woman calling herself Blair. He told her his name was Scott and told her to come to apartment 915 at Metro Towers. When she arrived, Petitioner noted that "Blair" did not fit the physical description she had given him over the phone. He told her he, therefore, did not wish to see her. Petitioner testified that the woman then followed him and entered the elevator behind him. She tried to persuade him to change his mind by exposing herself to him. He testified that she forced his hand between her legs. She then demanded a cancellation fee, which he declined to provide.

**II.      Procedural History**

Following a jury trial in Macomb County Circuit Court, Petitioner was convicted of first-degree criminal sexual conduct.  On December 5, 2000, Petitioner was sentenced as a second habitual offender to fourteen to twenty-one years imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I.      The trial court abused its discretion and committed reversible error by denying the defendant any chance to participate in jury voir dire/questioning of potential jurors before exercising peremptory and/or challenges for cause.

II.     A.      The trial court's comments before the jury improperly intruded into the jury's role as sole factfinder and suggested to the jury that the court believed defendant was less than honest, discredited the accused, bolstered the credibility of the government's witnesses and shifted or lessened the prosecutor's burden of proof in this case.

        B.      Further, the trial court abused its discretion and its rulings (denying defense objections to evidence) and comments improperly shifted the constitutional burden of proof to defendant and denied him federal due process, a fair trial, the right to trial by jury and resulted in "plain error" that affected Mr. Frankina's substantial rights.

III.    Defendant's conviction of first degree criminal sexual conduct (CSC I) based on personal injury must be reversed where there was insufficient evidence as a matter of law to sustain that conviction.

IV.     A.      The trial court abused its discretion, reversibly erred, denied defendant his constitutional rights to confrontation and a fair trial/federal due process by permitting over the objection of trial counsel, the prior recorded preliminary exam testimony of Brandy Doty, an alleged victim of a prior sexual assault to be read into evidence because it found her to be unavailable pursuant to M.R.E. 804(a)(4).

        B.      It was reversible error for the trial court to permit each juror to have and freely review a copy of the preliminary examination transcript, completely unredacted of the alleged M.C.R. 404(b) witness' testimony (Doty) which was read at trial, but not introduced into evidence.  As a result defendant was denied his constitutional rights to confrontation and federal due

process.

     V.      The prosecutor's improper conduct in this case by way of examination of witnesses, eliciting improper testimony, statements to the jury, argument and rebuttal irreparably prejudiced Defendant Frankina and denied him federal/fundamental due process, a fair trial and his right of confrontation. Alternatively, defendant Frankina was denied effective assistance of counsel.

     VI.     Defendant was denied fundamental due process and a fair trial by each individual error noted herein and/or the cumulative effect of such errors.

The Michigan Court of Appeals affirmed Petitioner's conviction, but remanded for resentencing because the prosecutor failed to timely file notice of the intention to seek a sentence enhancement. <u>People v. Frankina</u>, No. 31974 (Mich. Ct. App. May 22, 2003). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, which was denied on February 27, 2004. <u>People v. Frankina</u>, No. 124254 (Mich. Feb. 27, 2004).

On remand, the trial court resentenced Petitioner to 85 to 240 months imprisonment. Petitioner filed an appeal of right in the Michigan Court of Appeals from his resentencing, presenting the following claim:

The trial court's inclusion of six misdemeanors in the calculation of PRV 5, and the court's refusal to properly address Mr. Frankina's claims that four or five of the convictions were obtained without counsel, and one conviction was not his, was error necessitating a re-sentencing, where absent those six misdemeanors the guidelines range would be reduced.

The Michigan Court of Appeals affirmed the sentencing. <u>People v. Frankina</u>, No. 251371 (Mich. Ct. App. Feb. 22, 2005). Petitioner did not file a timely appeal in the Michigan Supreme Court.

Petitioner then filed the pending petition for a writ of habeas corpus, presenting the following claims:

     I.      Inadequate *voir dire*.

4

II.     Trial court's comments before the jury.

III.    Insufficient evidence of personal injury.

IV.     Preliminary examination transcripts read over objection and then never
        introduced into evidence.

V.      Prosecutorial Misconduct.

VI.     Cumulative effect of alleged errors.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110

Stat. 1214 ("AEDPA") applies to all habeas petitions filed after the effective date of the act,

April 24, 1996.  Because Petitioner's application was filed after April 24, 1996, the provisions of

the AEDPA, including the amended standard of review, apply to this case.

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts

reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an
>         unreasonable application of, clearly established Federal law, as
>         determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
>         determination of the facts in light of the evidence presented in the
>         State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a

petitioner's claims unless the state court's decision was contrary to or involved an unreasonable

application of clearly established federal law.  *Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998).

Additionally, this court must presume the correctness of state court factual determinations.  28

U.S.C. § 2254(e)(1)[1]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We

give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary

to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly
> established precedent if the state court applies a rule that contradicts the
> governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established
> precedent if the state court confronts a set of facts that are materially
> indistinguishable from a decision of this Court and nevertheless arrives at a result
> different from [the Court's] precedent.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States

Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the

"unreasonable application" clause when "a state-court decision unreasonably applies the law of

this Court to the facts of a prisoner's case."  Id. at 409.  The Court defined "unreasonable

application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should
> ask whether the state court's application of clearly established federal law was
> objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect

---

[1]        28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State
> court, a determination of a factual issue made by a State court shall
> be presumed to be correct.

application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 410-11.

## IV. Analysis

### A. Voir Dire

In his first claim for habeas corpus relief, Petitioner argues that he was deprived of his right to secure a fair and impartial jury when the trial court prohibited his attorney from asking questions during *voir dire*.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI. The right to an impartial jury is made applicable to the states by the Fourteenth Amendment. Turner v. Louisiana, 379 U.S. 466 (1965). Jury *voir dire* "is designed 'to protect [this right] by exposing possible biases, both known and unknown, on the part of potential jurors.'" Dennis v. Mitchell, 354 F.3d 511, 520 (6th Cir. 2003).

"The Constitution . . . does not dictate a catechism for *voir dire*, but only that the defendant be afforded an impartial jury." Morgan v. Illinois, 504 U.S. 719, 729 (1992). Nevertheless, "part of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors." Id. Supervision of *voir dire*, for the most part, is left to a trial courts "sound discretion." Ristaino v. Ross, 424 U.S. 589, 594 (1976), *quoting* Connors v. United States, 158 U.S. 408, 413 (1895). The exercise of the trial court's discretion is "subject to he essential demands of fairness." Aldridge v. United States, 283 U.S. 308, 310 (1931). "The

Constitution requires only that *voir dire* be conducted in a manner which ensures fundamental fairness." Dennis, 354 F.3d at 524.

The Michigan Court of Appeals held that Petitioner waived his claim that the jury *voir dire* was improperly conducted when his attorney expressed satisfaction with the jury selected. Frankina, slip op. at 1. The court of appeals went on to hold that the *voir dire* was adequate. The trial court judge chose to question the jurors himself rather than allowing the prosecutor or defense counsel to question them. He advised the jury panel that the case involved criminal sexual conduct and excused a juror who stated that she had been the victim of such a crime. He advised the jurors of the witness lists, explored their prior jury service, and assessed whether each prospective juror felt they could be impartial. The *voir dire* provided the opportunity to identify unqualified jurors. Petitioner has not shown that any unqualified jurors were selected for his jury. Thus, the Court finds that the court of appeals' opinion was not contrary to or an unreasonable application of Supreme Court precedent.

### B. Alleged Judicial Bias

In his second claim for habeas corpus relief, Petitioner argues that the trial court judge improperly intruded into the jury's role as sole factfinder, discredited the accused, bolstered the credibility of prosecution witnesses, and shifted or lessened the prosecutor's burden of proof. These numerous claims of judicial bias stem from one incident at trial. Macomb County Sheriff's Deputy Colleen Burke testified that, on January 8, 2000, she responded to a call to investigate a claim of domestic assault. Deputy Burke identified Petitioner as the individual who was being investigated. Petitioner gave his name as Paul Wilson and gave an incorrect apartment number to Deputy Burke. The following exchange then occurred:

8

> Prosecutor: What does it tell you as a deputy as to why a person would give you a false name and a false apartment number?

> Deputy Burke: He's trying to hide something.

Defense counsel objected on the ground that the question was irrelevant and called for speculation. The prosecutor argued that the testimony was relevant to Petitioner's attempts at concealment and flight from the police. The trial court ruled as follows:

> The Court is going to overrule the objection. It shows concealment of identification. It shows he's trying to hide something. You can bring a witness in if you wish to overrule it in some manner.

Tr., Vol. III, p. 40.

Respondent argues that this claim is barred from federal habeas review because it is procedurally defaulted. Where a state prisoner has defaulted his federal claims in state court based upon an independent and adequate state procedural rule, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

To determine whether a claim is procedurally defaulted, the court must determine: (1) if there is a state procedural rule that applies and petitioner failed to comply with that rule; (2) if the state court actually enforced the state procedural sanction; (3) if the state procedure ground is an "independent and adequate" ground to refuse review; and (4) if there is no cause and prejudice to excuse the default. Maupin v. Smith, 785 F.2d 135, 138 (6th Cir.1986), "[A] state rule is independent if the state court actually relies on it to preclude a merits review." Biros v. Bagley, 422 F.3d 379, 387 (6th Cir.2005) (emphasis added).

"Out of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." Dretke v. Haley, 541 U.S. 386, 388 (2004). "The cause and prejudice requirement shows due regard for States' finality and comity interests while ensuring that 'fundamental fairness [remains] the central concern of the writ of habeas corpus.'" Id. quoting Strickland v. Washington, 466 U.S. 668, 697 (1984).

The last state court to address this claim, the Michigan Court of Appeals held that the issue was not preserved for appellate review because Petitioner failed to object to the trial court's conduct at trial. Frankina, slip op. at 2. The failure to object rule is regularly followed by Michigan courts. See Simpson v. Jones, 238 F.3d 399, 408 (6th Cir. 2000); Toler v. McGinnis, 23 Fed. Appx. 259, 269 (6th Cir. 2001). Accordingly, the state court's judgment clearly rested on a procedural bar and the doctrine of procedural default is invoked.

Therefore, this Court may not review Petitioner's claims unless he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that failure to consider this claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.

In the present case, Petitioner has offered no reasons for his failure to object to the allegedly improper remark by the trial court. Because Petitioner has not demonstrated any cause for his procedural default, it is unnecessary for this Court to reach the prejudice issue. Smith v. Murray, 477 U.S. at 533; Harris v. Stegall, 157 F.Supp.2d 743, 750 (E.D.Mich.2001).

Additionally, Petitioner has not presented any new reliable evidence to support any

assertion of innocence which would allow this Court to consider his claim as a ground for a writ of habeas corpus in spite of the procedural default. Because Petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declines to review Petitioner's claim on the merits.  Harris, 157 F.Supp.2d at 751. Petitioner's state procedural default bars federal habeas review of his claim.

### C.      Sufficiency of the Evidence

Petitioner claims that insufficient evidence was presented to support his conviction because the prosecutor failed to establish beyond a reasonable doubt the "personal injury" element of first-degree criminal sexual conduct.

In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319 (emphasis in original).  Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the Jackson standard was contrary to or an unreasonable application of Supreme Court precedent.  In making this determination, this Court must afford the state court's findings of fact a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous.  28 U.S.C. § 2254(e)(1); West v. Seabold, 73 F.3d 81, 83 (6th Cir. 1996), *cert. denied*, 116 S. Ct. 2569 (1996).

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, held, in pertinent part:

Defendant . . . asserts that there was insufficient evidence that he inflicted personal injury to support his conviction of CSC I.  In reviewing a challenge to

11

the sufficiency of the evidence, this Court considers the evidence presented in the light most favorable to the prosecution to determine whether a rational juror could have found that the elements of the crime charged were proven beyond a reasonable doubt. People v. Nowack, 462 Mich. 392, 399-400; 614 N.W.2d 78 (2000). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." Id. at 400.

The prosecutor charged defendant with CSC I as described within M.C.L. 750.520b(1)(f), which provides, in relevant part, as follows:

> A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exist:
> * * *
> (f) The actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration. Force or coercion includes but is not limited to any of the following circumstances:
> (i) When the actor overcomes the victim through the actual application of physical force or physical violence.

The Legislature has defined "personal injury" to include "*bodily injury*, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ." M.C.L. 750.520a(k) (emphasis supplied by Michigan Court of Appeals). This Court has long recognized "the legislative judgment that evidence of even insubstantial physical injuries is sufficient to support a conviction for criminal sexual conduct in the first-degree." People v. Himmelein, 177 Mich. App. 365, 378; 442 N.W.2d 667 (1989).

Viewed in the light most favorable to the prosecution, the testimony in this case, by the victim and a nurse who thoroughly examined the victim two days after defendant assaulted her, constituted an ample basis for a rational jury to find beyond a reasonable doubt that defendant's painful insertion of his hand into the victim's vagina caused an injury apparent two days after the attack, and that defendant pulled out some of the victim's hair during the crime causing soreness that continued two days later. . . While no indication exists that the injuries inflicted by defendant permanently or seriously injured the victim, the evidence regarding even these allegedly insubstantial injuries satisfied the bodily injury portion of the personal injury element of M.C.L. 750.520b(1)(f).

Frankina, slip op. at 3-4.

The Michigan Court of Appeals, although not citing Jackson, cited case law which

clearly incorporated the Jackson standard. Petitioner has not presented any evidence to show that the state court's findings of fact were erroneous. Therefore, according the state court's findings of fact a presumption of correctness, this Court concludes that the Michigan Court of Appeals' decision that sufficient evidence was presented to establish the personal injury element of first-degree criminal sexual conduct did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

### D.    Preliminary Examination Testimony

Next, Petitioner argues that the trial court violated his right of confrontation when the court permitted the preliminary examination testimony of Brandy Doty to be read at trial. Brady Doty's preliminary examination testimony was given in connection with criminal charges filed against Petitioner for the alleged sexual assault of Brandy Doty.[2] At the preliminary examination, Doty testified that Petitioner sexually assaulted her on December 24, 1999, in the same apartment building where the assault of Ms. Park occurred.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." Pointer v. Texas, 380 U.S. 400, 403 (1965). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to

---

[2] The ultimate outcome of that case is unclear from the record before the Court.

protect . . . from erosion." Id., at 404-05 (internal quotation omitted).  The right to a trial by jury is predicated upon the belief "'that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.'"  Id. at 405, *quoting* Turner v. State of Louisiana, 379 U.S. 466, 472-73 (1965).

The standard for evaluating Confrontation Clause claims was first set forth in Ohio v. Roberts, 448 U.S. 56 (1980) *overruled* Crawford v. Washington, 541 U.S. 36 (2004).[3]  "[A] witness is not 'unavailable' for purposes of . . . the exception to the confrontation requirement unless the prosecutorial authorities have made a *good-faith effort* to obtain his [or her] presence at trial."  Id. at 74.  In Roberts, the Supreme Court held out-of-court statements admissible if the declarant was unavailable and the statement bears adequate "indicia of reliability."  Reliability could be "inferred without more in a case where the evidence falls within a firmly rooted hearsay exception."  Id.  If the evidence did not fall within a firmly rooted hearsay exception, the court was required to exclude it "absent a showing of particularized guarantees of trustworthiness." Id.  Roberts permits admission of testimonial evidence upon a finding that the declarant is unavailable and the defendant had an opportunity for cross-examination.

In this case, the Michigan Court of Appeals held that the trial court correctly determined that the trial court was correct in determining that Doty, who was in the final three months of a high-risk pregnancy, and confined to bed rest at her home in Ohio, was unavailable.  The

---

[3]  While the Supreme Court overruled Ohio v. Roberts in Crawford v. Washington, 541 U.S. 36 (2004), the Sixth Circuit Court of Appeals has held that Crawford does not apply retroactively to cases on collateral review.  Dorchy v. Jones, 398 F.3d 783, 788 (6th Cir. 2005). Therefore, this Court must determine whether the state court's decision was contrary to Ohio v. Roberts.

Michigan Court of Appeals further held:

> [W]e conclude that the circuit court did not abuse its discretion in admitting her prior preliminary examination testimony. The circuit court correctly observed that Doty's prior testimony, which she offered in support of a charge that defendant assaulted her with the intent to commit criminal sexual conduct involving penetration, need not have occurred during the preliminary examination held to address the instant charges. "M.R.E. 804(b)(1) by its language permits testimony from 'the same or a different (prior) proceeding" if the party against whom the testimony is offered had the opportunity and motive in the prior proceeding 'to develop the testimony by direct, cross, or redirect examination.'" people v. Morris, 139 Mich. App. 550, 555; 362 N.W.2d 830 (1984). As in Morris, *supra*, the instant defendant had an opportunity to cross-examine Doty during her prior testimony because the testimony arose in a prior preliminary examination in which he also was the defendant. . . .

> With respect to defendant's suggestion that the admissibility of Doty's prior testimony pursuant to M.R.E. 804(b)(1) deprived him of his constitutional right of confrontation, defendant apparently recognizes that our Supreme Court has decided to the contrary in People v. Meredith, 459 Mich. 62, 67-71; 586 N.W.2d 538 (1998). The Supreme Court held that M.R.E. 804(b)(1) is a firmly rooted constitutes a firmly rooted hearsay exception, and that "the fact that M.R.E. 804(b)(1) is a firmly rooted exception means that, for present purposes, the prior testimony of the [witness] bears sufficient indicia of reliability. The Confrontation Clause is satisfied, and the testimony is admissible." Meredith, *supra* at 69-71. Accordingly, defendant's suggestion of a constitutional violation arising from the admission of Doty's prior testimony lacks merit.

Frankina, slip op. at 5-6.

The Court finds that the state court's decision that Doty was unavailable and that a good-faith effort was made to obtain her presence was not contrary to or an unreasonable application of Supreme Court precedent.

The Court next turns to the question whether Petitioner had an opportunity to cross-examine Doty. In order for admission of the preliminary examination testimony not to run afoul of the Confrontation Clause, Petitioner must have had an opportunity to cross-examine Doty. The Michigan Court of Appeals concluded that Petitioner had an adequate opportunity to cross-

examine Doty.  Petitioner has failed to call that conclusion into question.  Thus, the Court

concludes that the state court's decision that Petitioner had the opportunity to cross-examine

Doty and had a similar motive for doing so was not contrary to or an unreasonable application of

Supreme Court precedent.

Petitioner also argues that the trial court erred in permitting the jury to read along using

transcribed copies of Doty's testimony as her preliminary examination testimony was being read

into the record.  The Michigan Court of Appeals held that it was not improper to provide the jury

with the transcript, Petitioner failed to object at the time, and that Petitioner's claim that the jury

was provided with an unredacted transcript was unsupported.  Petitioner fails to establish that the

Michigan Court of Appeals' decision was contrary to or an unreasonable application of any

controlling Supreme Court precedent.

### E.    Alleged Prosecutorial Misconduct

In his fifth claim for habeas corpus relief, Petitioner asserts several allegations of

prosecutorial misconduct.  Specifically, Petitioner alleges that the prosecutor improperly (i)

testified by injecting facts not in evidence during argument; (ii) cross-examined witnesses; (iii)

denigrated defense counsel and sought conviction by appealing to sympathy for the victims; and

(iv) compared Petitioner to Al Capone, O.J. Simpson and the Menendez brothers.

The Court *sua sponte* raises the issue of procedural default with respect to Petitioner's

claims of prosecutorial misconduct.[4]  *See* Elzy v. United States, 205 F.3d 882 (6th Cir. 2000)

(holding that court may *sua sponte* raise issue of procedural default).

---

[4] Without explanation, Respondent fails to address these claims in his answer to the
petition.  Because the Court has determined relief on these claim is not warranted, and to avoid
delay in adjudicating this matter, however, the Court will not order a supplemental answer.

The last state court to issue a reasoned opinion addressing this claim, the Michigan Court of Appeals, reviewed the claim only for plain error because defense counsel did not object to the conduct. The court then proceeded to assess each of the claims and concluded that none of them amounted to plain error warranting further review or relief.

The contemporaneous-objection rule was firmly established and regularly followed with respect to claims of prosecutorial misconduct at the time of the petitioner's trial. *See, e.g.,* People v. Buckey, 424 Mich. 1, 17-18, 378 N.W.2d 432, 440 (1985); People v. Sharbnow, 174 Mich. App. 94, 100, 435 N.W.2d 772, 775 (1989). The state court's reliance on the petitioner's failure to object to the prosecutor's conduct is an adequate and independent state ground for foreclosing review. *See* Engle v. Isaac, 456 U.S. 107, 110 (1982) (concluding that a petitioner who fails to comply with a state rule mandating contemporaneous objections to jury instructions may not challenge the constitutionality of those instructions in a federal habeas corpus proceeding). The fact that the state court of appeals engaged in plain error review of the prosecutorial misconduct claims does not constitute a waiver of the state procedural default. *See* Seymour v. Walker, 224 F.3d 542, 557 (6th Cir. 2000). Rather, the review on those terms constitutes enforcement of the state procedural rule. *See* Hinkle v. Randle, 271 F. 3d 239, 244 (6th Cir. 2001).

Therefore, this Court may not review the petitioner's claims unless he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that failure to consider these claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.

The petitioner alleges ineffective assistance of counsel as cause to excuse his procedural

default.  The Supreme Court has held that "cause" under the cause and prejudice standard must be "something external to the petitioner, something that cannot fairly be attributable to him." Coleman, 501 U.S. at 753.  The Court further held that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error. . . . Attorney error that constitutes ineffective assistance of counsel is cause, however."  Id. at 753-54 (internal citations omitted).

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  Id. at 687.  Second, a petitioner must show that counsel's deficient performance prejudiced petitioner.  To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  A court's review of counsel's performance must be "highly deferential."  Id. at 689

To evaluate whether counsel was ineffective in failing to object to the alleged instances of prosecutorial misconduct, the Court must consider the merits of the alleged instances of prosecutorial misconduct.  "Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation."  Caldwell v. Russell, 181 F.3d 731, 736 (6th

Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." <u>Angel v. Overberg</u>, 682 F.2d 605 (6th Cir. 1982). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" <u>Pritchett v. Pitcher</u>, 117 F.3d 959, 964 (6th Cir. 1997), (*quoting* <u>Serra v. Michigan Department of Corrections</u>, 4 F.3d 1348, 1355 (6th Cir. 1993)).

First, Petitioner argues that the prosecutor improperly referenced facts not in evidence, thereby providing his own testimony. "[P]rosecutors can argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." <u>Bates v. Bell</u>, 402 F.3d 635, 646 (6th Cir.2005). However, "counsel cannot misstate evidence." <u>United States v. Carter</u>, 236 F.3d 777, 784 (6th Cir.2001). A review of the record shows that the prosecutor simply asked the jury to make reasonable inferences based upon the testimony presented and did not introduce facts not in evidence.

Second, Petitioner argues that the prosecutor improperly cross-examined witnesses. Petitioner provides no reference to specific questions he claims are objectionable. The Court has reviewed the transcript and finds that none of the prosecutor's questions on cross-examination constituted misconduct.

Third, Petitioner argues that counsel's closing and rebuttal arguments were improper because they denigrated defense counsel and asked jurors to convict based upon sympathy for the victim. The Court has reviewed the closing argument and finds that the prosecutor did not denigrate defense counsel. Instead, he highlighted the inconsistencies in the defense and argued that these inconsistencies rendered the defense theory unbelievable. A prosecutor may argue all reasonable inferences that may be drawn from the evidence admitted at trial as they relate to the

prosecutor's case. *See* <u>U.S. v. Francis</u>, 170 F.3d 546, 552 (6th Cir. 1999). The prosecutor's arguments were reasonable arguments designed to persuade the jury to the prosecutor's theory of the case. They did not improperly disparage defense counsel.

In addition, Petitioner's argument that defense counsel improperly appealed to the jurors' sympathy in asking them to convict is unfounded. Petitioner cites a particular page of the transcript in which the prosecutor discusses the potential motives the victim might have for testifying. The prosecutor noted that a woman who claims to have been sexually assaulted must undergo an invasive physical examination and argued that this is one of many factors which should lead the jury to believe the victim was not manufacturing these allegations. The prosecutor did not ask the jury to convict on that basis. Viewed in its entirety, the prosecutor's closing argument reviewed the evidence presented at trial and asked the jury to convict on that basis.

Finally, Petitioner challenges the prosecutor's statement comparing him to Al Capone, O.J. Simpson and the Menendez brothers. The last state court to address Petitioner's claim that the prosecutor committed misconduct in referencing these notorious cases, the Michigan Court of Appeals, held that no plain error affected Petitioner's rights because of the responsive and isolated nature of the remarks, and the trial court's cautionary instruction to the jury that the lawyers' arguments do not constitute evidence. While this Court does not condone the prosecutor's reference to these cases, the state court's decision that this did not constitute prosecutorial misconduct is not contrary to or an unreasonable application of Supreme Court precedent.

Petitioner has failed to demonstrate that the prosecutor engaged in misconduct. Thus, the

Court concludes that trial counsel was not ineffective in failing to object to the prosecutor's conduct. Because Petitioner has failed to establish that his trial attorney rendered ineffective assistance of counsel, he has failed to show cause for his procedural default. His claims are therefore barred unless he can establish that a constitutional error resulted in a fundamental miscarriage of justice. Schlup v. Delo, 513 U.S. 298 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. Schlup, 513 U.S. at 321. Thus, Petitioner must assert a constitutional error along with a claim of innocence. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." Id. This evidence "must show that it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt." Id. at 327. Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty. Therefore, the prosecutorial misconduct claims are barred from consideration by procedural default.

### F.    Cumulative Effect of Alleged Errors

In his final claim, Petitioner alleges that he was deprived of a fair trial because of cumulative error. The Sixth Circuit has expressed doubt that about the validity of the argument that cumulative errors may warrant habeas relief in the post-AEDPA era. *See* Lorraine v. Coyle, 291 F.3d 416, 447 (6th Cir. 2002) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief"); Moore v. Parker, 425 F.3d 250 (6th Cir. 2005) (same). Moreover, even if such a claim could merit habeas relief, the Court does not find that

errors were committed when considered separately or together that abridged Petitioner's constitutional rights. Petitioner is not entitled to habeas relief on his cumulative errors claim.

**V.      Conclusion**

Petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States. Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

s/John Corbett O'Meara
United States District Judge

Dated:  June 5, 2007

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, June 5, 2007, by electronic and/or ordinary mail.

s/William Barkholz
Case Manager